UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                                 :
MARIANITO RUIZ,                  :
                                 :
          Plaintiff,             :     Civ. No. 15-3304 (NLH) (JS)
                                 :
     v.                          :     OPINION
                                 :
                                 :
NEW JERSEY                       :
DEPARTMENT OF CORRECTIONS,       :
et al.,                          :
          Defendants.            :
                                 :
_____:
```

APPEARANCES:

John C. Connell, Esq.
Jeffery M. Scott, Esq.
Nicholas Franchetti, Esq.
Archer & Greiner, P.C.
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033-0968

     Counsel for Defendant Lauren Reeves

Richard A. Stoloff, Esq.
Law Offices of Richard A. Stoloff
605 New Road
Linwood, NJ 08221

     Counsel for Plaintiff Marianito Ruiz

HILLMAN, District Judge

     Plaintiff Marianito Ruiz, a former state prisoner, alleges

Jerry Stretch, James McCabe, Kevin Manning, Thomas Togno,

Matthew Arrowood, Michael Ryan, Gerald Gribble, Stephen Weldon, Brenda Hepner, Edward Soltys, and Lauren Reeves[1] conspired to inflict excessive force on Plaintiff and to cover-up that assault by claiming Plaintiff was the aggressor. ECF No. 57. He raises federal claims of excessive force, conspiracy, failure to intervene, supervisory liability, and federal civil rights violations. Id. at 9-16. He also raises state tort claims of assault, battery, and intentional infliction of emotional distress. Id. at 16-19.

This matter comes before the Court on Defendant Lauren Reeves' motion for summary judgment. ECF No. 130. Plaintiff opposes the motion. ECF No. 135. The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as it concerns a federal question, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

For the reasons that follow, the Court will grant summary judgment to Defendant Reeves on the intentional infliction of emotional distress claim. Summary judgment is denied on the remainder of the claims.

---

[1] For ease of reference, the Court will use "Defendants" when referring to all defendants and "BSP Defendants" when referring just to defendants Stretch, McCabe, Manning, Togno, Arrowood, Ryan, Gribble, Weldon, Hepner, and Soltys as Defendant Reeves is proceeding separately.

I.  <u>BACKGROUND</u>

The facts of this case are largely disputed.  The parties agree that on April 12, 2013, Plaintiff Marianito Ruiz was an inmate housed in Bayside State Prison's E-Unit.  ECF No. 136, Plaintiff's Statement of Facts ("PSOF") ¶ I.3; ECF No. 130-3, Reeves' Statement of Facts ("RSOF") ¶ 3.  The parties further agree that a Code 33, defined as a "an emergency involving an inmate attack on an officer," was called over the radio by one of the officers.  PSOF ¶ I.4; RSOF ¶ 4.  Multiple officers arrived in response to the Code 33.  PSOF ¶ I.4; RSOF ¶ 4.  The parties vigorously dispute the reason the code was called and what happened after the code was called.

Defendant Reeves asserts Plaintiff was combative towards the responding officers, which required the officers to use force to bring him into compliance.  RSOF ¶ 4.  The parties agree that OC spray[2] was used and that Plaintiff was handcuffed, but they dispute the necessity of both actions.  Defendant Reeves testified in her first deposition that she took Plaintiff's feet "because he was kicking a little bit."  RSOF ¶ 5.[3]

---

[2] Oleoresin capsicum spray, colloquially known as pepper spray.

[3] Plaintiff admits Defendant Reeves testified to this fact but disputes its accuracy.  PSOF ¶ I.5.

Plaintiff was charged with three disciplinary violations on April 15, 2013: two counts of assault and one count of conduct that disrupts the orderly running of the institution. PSOF ¶ II.7. Plaintiff testified at his hearing that "he didn't touch anyone." Id. The disciplinary hearing officer ("DHO") relied on the officers' reports and testimony to conclude that Plaintiff had initiated the encounter by charging Defendant James McCabe and striking him in the face with a closed fist. Id. The DHO further concluded that Plaintiff struck Defendant Jerry Stretch several times while Defendant Stretch was attempting to restrain Plaintiff. Id. "As a result of these actions, movements were cancelled, mess was delayed, the crime scene took 30 minutes to clean. Also several staff were removed from their normal duties to suit up [and] escort the non-compliant [inmate] to detention." RSOF ¶ 7 (alterations in original). As a result, the DHO found Plaintiff guilty of disrupting the orderly running of the institution. PSOF ¶ II.7. Plaintiff lost 940 days of commutation time as a sanction. Id. He appealed the charges, but the charges were upheld. Id.

In his Supplemental Statement of Facts,[4] Plaintiff presents a vastly different account of the encounter. He asserts Defendant Stretch struck him first, and "after he was first

_____

[4] Defendant Reeves did not respond to Plaintiff's supplemental facts as required by Local Civil Rule 56.1(a).

4

struck by defendant, Stretch, he fell purposefully and immediately to the ground because he knew he was going to continue to be struck by Stretch and the other officers in the Unit." Plaintiff's Supplemental Statement of Facts ("PSSOF"), ECF No. 136 ¶ III.1. Defendant Steven Welden testified that he did not see Plaintiff punch anyone. Id. ¶ III. 4. Defendant Thomas Togno testified he only saw Plaintiff strike Defendant McCabe once. Id. ¶ III.5. He stated he did not see Plaintiff strike any other officer and that it seemed that the responding officers had the situation under control. Id. Defendant Reeves testified in her first deposition that she did not recall seeing Plaintiff strike any guard. Id. ¶ III.2.

Dr. Wayne Ross, a forensic pathologist, "concluded that Ruiz'[s] injuries were as a result of multiple strikes to his head and body and being choked, while the injuries to defendant, Stretch's hand are as a result of multiple blows landed during the incident." Id. ¶ III.10. Dr. Ross also concluded Plaintiff did not land any "sufficient strikes to anybody during the incident" based on the lack of injuries to Plaintiff's hands. Id. ¶ III.11. Plaintiff had multiple facial fractures that required surgery to implant hardware. Id. ¶ III.12.

At the conclusion of her first deposition,[5] Defendant Reeves approached Plaintiff's counsel, Richard Stoloff, and stated that "plaintiff had been set up to be assaulted, that he did not strike any officer, that one officer struck another officer to make it appear that plaintiff did it and that she lied regarding the incident because she was afraid." Id. ¶ III.3.

II.   STANDARD OF REVIEW

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A disputed fact is material when it could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 250. The Court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a genuine issue concerning any material fact. See Celotex Corp.

---

[5] Defendant Reeves was not a party at the time of her first deposition and was not represented by counsel.

v. Carrett, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." Hugh, 418 F.3d at 267 (citing Anderson, 477 U.S. at 251).

If the court determines that "the record taken as a whole could not lead a rational trier or fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

III. DISCUSSION

Defendant Reeves moves for summary judgment on Plaintiff's amended complaint. ECF No. 130. Plaintiff concedes the intentional infliction of emotional distress claim must be dismissed but opposes summary judgment on the remainder of the claims.

7

The principal issues to be decided are (1) whether the Supreme Court's decisions in Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997) bar Plaintiff's claims; (2) whether Plaintiff is precluded from arguing any facts that conflict with the facts found at the disciplinary hearing; (3) to the extent there may have been a violation, is Defendant Reeves entitled to qualified immunity; (4) does the Court have supplemental jurisdiction over any remaining state tort claims; (5) whether Defendant Reeves is immune under the New Jersey Tort Claims Act; and (6) whether Defendant Reeves is entitled to judgment as a matter of law on Plaintiff's state tort claims.

A.    Heck v. Humphrey

In Heck, the Supreme Court held that before a § 1983 plaintiff may "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," he must first "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]"  512 U.S. at 486-87. The Court extended Heck's "favorable termination" rule to prison disciplinary sanctions which alter the duration of a prisoner's

8

term of incarceration, including the loss of good time credits.
Edwards, 520 U.S. 641.

It is uncontested that the DHO found Plaintiff committed
the infractions of assault, N.J.A.C. § 10A:4-4.1(a)(1)(ii); and
conduct that disrupts the orderly running of the institution,
N.J.A.C. § 10A(a)(2)(xxix).  It is also uncontested that the
infractions have not been expunged or otherwise reversed by the
Department of Corrections or by any court.

Plaintiff argues Heck and Edwards should not apply to him
at all because he is no longer in state custody and the habeas
remedy is no longer available to him.  This position has been
rejected by the Third Circuit.  See Williams v. Consovoy, 453
F.3d 173, 177 (3d Cir. 2006) ("[A] § 1983 remedy is not
available to a litigant to whom habeas relief is no longer
available."); Gilles v. Davis, 427 F.3d 197, 209-10 (3d Cir.
2005) ("Heck's favorable termination rule applies to all § 1983
plaintiffs, not just those in state custody.").  Therefore,
Plaintiff's claims are barred if his success "would necessarily
demonstrate the invalidity of [his] confinement or its
duration."  Wilkinson v. Dotson, 544 U.S. 74, 82 (2005).

The Court finds that Plaintiff's claims do not necessarily
demonstrate the invalidity of Plaintiff's confinement or
duration of his sentence.  Unlike federal good time credits, New
Jersey "good time" does not "necessarily" mean an earlier

release date as the credits are used to compute the prisoner's
parole eligibility date. N.J.S.A. § 30:4-140. "Parole
eligibility is different from parole suitability. The fact that
a prisoner is eligible for parole means only that the paroling
authority must consider his application for parole under the
relevant parole guidelines." Thomas v. Brennan, 961 F.2d 612,
614 n.3 (7th Cir. 1992). Therefore, "restoration of
[Plaintiff's] good-time credits would afford him only speedier
consideration for discretionary parole, rather than ensure
speedier release." Marshall v. Milyard, 415 F. App'x 850, 855
(10th Cir. 2011) (finding retaliation claim was not Heck
barred). See also Wilkinson 544 U.S. at 82 (finding suit
challenging state procedures used to deny parole eligibility was
not Heck barred because "it means at most new eligibility
review, which at most will speed consideration of a new parole
application." (emphasis in original)). Because restoration of
Plaintiff's good time credits would have only presented the
possibility of earlier release as opposed to the surety, Heck
does not necessarily bar his claims. See also Nelson v.
Campbell, 541 U.S. 637, 647 (2004) ("[W]e were careful in Heck
to stress the importance of the term 'necessarily.'").

    Defendant Reeves alternatively argues that even if
Plaintiff's claims are not categorically barred by Heck and
Edwards, Plaintiff cannot offer any evidence that contradicts

the findings of the disciplinary hearing officer.  In essence, she argues Plaintiff must admit that he struck Office McCabe first and resisted officers' efforts to subdue him.  Defendant Reeves relies on Concepcion v. Morton's pronouncement that "the Court may not consider evidence that implies that the disciplinary punishments imposed against the plaintiffs are invalid."  125 F. Supp. 2d 111, 123 (D.N.J. 2000), overruled on other grounds, 306 F.3d 1347 (3d Cir. 2002).

First, the Supreme Court has never held that parties are collaterally estopped from contesting facts from prison disciplinary findings.  See Simpson v. Thomas, 528 F.3d 685, 694 (9th Cir. 2008) ("Since the inception of the rule in Heck, the Court has only addressed this issue a few times, and in none of those cases did the Court address the use of Heck to bar evidence.").  Second, the principles of collateral estoppel do not warrant application in this case.  Defendant Reeves cites the Third Circuit's statement in Roth v. Koppers Industries, Inc., that "[w]ith respect to section 1983, the [Supreme] Court examined congressional intent and the policies underlying common law rules of preclusion, and concluded that unreviewed administrative factfindings should be given preclusive effect in subsequent section 1983 actions."  993 F.2d 1058, 1061 (3d Cir. 1993).  However, the Court of Appeals clarified in a footnote that this preclusive effect is limited to  "'when a state agency

acting in a judicial capacity . . . resolves disputed issues of
fact properly before it which the parties have had an adequate
opportunity to litigate . . . .'" Id. at 1061 n.3 (quoting
Univ. of Tennessee v. Elliott, 478 U.S. 788, 798 (1986)) (first
omission in original).

The late Judge Dickinson R. Debevoise of this District
noted in a case like this one that Concepcion "conditions the
preclusive effect of a disciplinary hearing's findings on the
validity of that process." Kounelis v. Sherrer, 529 F. Supp.
2d. 503, 529 (D.N.J. 2008). In Kounelis, defendants argued that
plaintiff could not proceed with his excessive force claim
because he had been found guilty of unauthorized touching at a
disciplinary proceeding. Id. at 528-29. Plaintiff submitted
evidence that defendants failed to preserve the surveillance
video, and Judge Debevoise concluded spoliation sanctions were
warranted. Id. at 520. "Although Defendants accurately observe
that the disciplinary hearing officer's finding of guilt has not
been reversed, Defendants' argument ignores the fact that the
disciplinary hearing itself is subject to attack and was
impaired by the spoliation of evidence—evidence that may have
supported Kounelis's version of events and resulted in a finding
of not guilty." Id. at 529. "Thus, there is sufficient
evidence that Kounelis's disciplinary hearing was impaired and,
if so, Kounelis is not precluded from presenting evidence in

support of his § 1983 claim for violation of his Eighth Amendment rights." Id.

As set forth in more detail below, Plaintiff has presented the Court with enough evidence of a conspiracy by Defendants – evidence coming from one of the Defendants herself - to suggest that Plaintiff's disciplinary proceeding was not an "adequate opportunity to litigate" the issues. It would be perverse injustice to rely on a corrupted disciplinary process and a result procured by perjury to shield a defendant from the consequences of an intentional attack on an inmate by prison guards. Heck and Edwards must be read in light of the constitutional protections afforded the incarcerated which would include a disciplinary process free of perjury and deceit. In the unique circumstances of this case, the Court will not preclude Plaintiff from arguing his version of events to a jury.

B. Qualified Immunity

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015) (internal citation and quotation marks omitted). The first prong of the analysis "asks whether the facts, [t]aken in the light most favorable to the party asserting the injury,... show the officer's conduct violated a [federal]

right[.]" Tolan v. Cotton, 572 U.S. 650, 655-56 (2014) (per curiam) (internal quotation marks and citations omitted) (alterations and omissions in original). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." Id. at 656 (internal citation and quotation marks omitted). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (internal quotation marks omitted).

"[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tolan, 572 U.S. at 651 (second alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." Id. at 656; see also Bistrian v. Levi, 912 F.3d 79, 83 n.2 (3d Cir. 2018) ("In assessing an assertion of qualified immunity, we take the facts in the light most favorable to 'the party asserting the injury'...." (quoting Scott v. Harris, 550 U.S. 372 (2007))). Defendant Reeves asserts she is entitled to qualified immunity on Plaintiff's excessive force, failure to intervene, and conspiracy claims.

The Court denies qualified immunity at this time because there are disputed issues of fact on Plaintiff's claims. "The test for whether a claim of excessive force is constitutionally actionable is 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" <u>Giles v. Kearney</u>, 571 F.3d 318, 328 (3d Cir. 2009)(quoting <u>Whitley v. Alber</u>, 475 U.S. 312, 319 (1986)). The relevant factors for consideration are:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

<u>Id.</u>; <u>see also</u> <u>Brooks v. Kyler</u>, 204 F.3d 102, 106 (3d Cir. 2000).

In order to grant Defendant Reeves qualified immunity, the Court must accept her version of events, namely that Plaintiff struck the first blow against Defendant McCabe and resisted Defendants' efforts to restrain him. The Court cannot resolve factual disputes in Defendant Reeves' favor on summary judgment. <u>Tolan</u>, 572 U.S. at 656; <u>see</u> <u>also</u> <u>Giles</u>, 571 F.3d at 327 (reversing district court for finding qualified immunity in excessive force case where "such a legal conclusion ... rests on

a factual presumption that is inappropriate on summary judgment").

If the Court accepts Plaintiff's version of events for summary judgment purposes, he has easily stated an excessive force claim. There was no need for the application of force because Plaintiff had not done anything to warrant force being used against him, nor was there any safety risk to the staff. Plaintiff was struck in the head, face, and ears and was held in a choke hold. ECF No. 145-26 at 4. He was pepper sprayed. Id. If there was an attempt to temper the use of force it is well hidden from the Court.

Among other injuries, Plaintiff sustained a "comminuted right orbital floor fracture into the zygomatic bone, comminuted right maxillary sinus fracture and zygomatic arch fracture." Id. Cooper Hospital confirmed multiple facial fractures, and CT scans showed "extensive swelling and bruises to the front, sides and back of the head." Id.; see also ECF No. 145-28. He underwent surgery to implant metal plates and screws. ECF No. 145-28 at 3. Using these facts, a reasonable jury could conclude that the force was not inflicted as part of a "good faith effort to maintain or restore discipline" because Plaintiff testified he had done nothing to provoke the assault.

Moreover, Defendant Reeves is subject to an adverse inference. Defendant Reeves argues there is no evidence that

she participated in the assault beyond holding down Plaintiff's legs. However, Plaintiff has submitted evidence that Defendant Reeves was aware of and participated in the alleged conspiracy with the BSP Defendants. See generally ECF No. 145-7 (deposition of Richard A. Stoloff). Defendant Reeves invoked her Fifth Amendment right against self-incrimination during her second deposition, see generally ECF No. 145-3, and "[u]nlike the rule in criminal cases . . . reliance on the Fifth Amendment in civil cases may give rise to an adverse inference against the party claiming its benefits." S.E.C. v. Graystone Nash, Inc., 25 F.3d 187, 190 (3d Cir. 1994). A reasonable factfinder combining Plaintiff's testimony, Mr. Stoloff's testimony, and Defendant Reeves' invocation of the Fifth Amendment could infer that Defendant Reeves was more involved in the conspiracy than she testified at her first deposition. Graystone Nash, Inc., 25 F.3d at 191. From that adverse inference, a reasonable factfinder could conclude Defendant Reeves did more than just hold down Plaintiff's legs.

"The right to be free from an unprovoked beating is clearly established." Hill v. Algore, 85 F. Supp. 2d 391, 409 (D.N.J. 2000); see also Thompson v. Montemuro, 383 F. Supp. 1200, 1203 (E.D. Pa. 1974). Under the version of events most favorable to Plaintiff, Defendants purposefully inflicted severe pain on

Plaintiff for no reason.  A reasonable officer would have known that this behavior was not lawful.

Granting Defendant Reeves qualified immunity on Plaintiff's failure to intervene claim also requires the Court to accept her version of events, which it may not do on summary judgment. "[A] corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002).  A reasonable factfinder could determine using the version of events most favorable to Plaintiff that Defendant Reeves had a realistic opportunity to intervene but did not do so.  Mr. Stoloff testified that Defendant Reeves admitted to him that "[a]ll the COs knew" about how Plaintiff had been "set up to be beat."  ECF No. 146-7 at 18:3, 17:8.

A reasonable inference from this testimony is that Defendant Reeves knew the assault on Plaintiff was unjustified but did not intervene to stop it.  "[I]t would be clear to a reasonable officer that failing to intervene when a fellow officer employs excessive force" against an inmate who was not resisting and had not provoked the use of force against him was unlawful.  Abrahante v. Johnson, No. 07-5701, 2009 WL 2152249, at *12 (D.N.J. July 14, 2009) (collecting cases that recognize

an officer's duty to intervene when a fellow officer employs
excessive force).

Finally, Defendant Reeves argues she is entitled to
qualified immunity on Plaintiff's conspiracy and federal civil
rights violation claims because Plaintiff has failed to allege
an underlying constitutional violation.  ECF No. 130-1 at 27-28.
The existence of the conspiracy is a disputed issue of fact that
must be determined at trial; whether Defendant Reeves is
entitled to qualified immunity depends entirely on whether the
ultimate factfinder believes Plaintiff's version of events.
Because resolution of these issues implicates "disputes over
facts that might affect the outcome of the suit under the
governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986), summary judgment on qualified immunity grounds is
not appropriate at this time.  "Just as the granting of summary
judgment is inappropriate when a genuine issue exists as to any
material fact, a decision on qualified immunity will be
premature when there are unresolved disputes of historical fact
relevant to the immunity analysis."  Curley v. Klem, 298 F.3d
271, 278 (3d Cir. 2002).  Therefore, the Court will not grant
summary judgment to Defendant Reeves on the basis of qualified
immunity at this time.

C.    Supplemental Jurisdiction

The success of Defendant Reeves' next argument, that the Court lacks supplemental jurisdiction over any remaining state tort claims, depends on dismissal of all of the claims over which this Court has original jurisdiction.  <u>See</u> 28 U.S.C. § 1367(c)(3).  As the Court denies summary judgment on the federal claims, the Court retains supplemental jurisdiction over Plaintiff's state law claims.  28 U.S.C. § 1367(a).

D.    New Jersey Tort Claims Act

Defendant Reeves also argues that she is immune from suit under the New Jersey Tort Claims Act ("NJTCA").  The NJTCA states in relevant part that "[a] public employee is not liable if [s]he acts in good faith in the execution or enforcement of any law."  N.J.S.A. § 59:3-3.  "In order to meet the good faith standard, [a] public employee either must demonstrate objective reasonableness or that [s]he behaved with subjective good faith. The burden of proof is upon the employee, who must prove either of those components in order for the good faith immunity to attach."  <u>Toto v. Ensuar</u>, 952 A.2d 463, 470 (N.J. 2008)(first alteration in original) (internal quotation marks and citation omitted).

Accepting Plaintiff's version of events for summary judgment purposes, Defendant Stretch struck Defendant McCabe in the face and then called a Code 33 based on the false premise

that Plaintiff was the one to strike Defendant McCabe.  Other officers, including Defendant Reeves, responded to the Code 33 and then participated in the assault or failed to prevent other officers from assaulting Plaintiff even though he was not resisting or being combative in any way.  Finally, "[a]ll the COs" knew that Defendant Stretch had really been the one to strike Defendant McCabe but concealed the truth in a "blue wall of silence" until the truth was finally revealed after Defendant Reeves' first deposition.  ECF No. 145-7 at 6, 18:3.

Before admitting the truth, Defendant Reeves submitted false reports stating Plaintiff "charged at S.C.O. McCabe and punched him with a closed fist in the left side of the fact." ECF No. 145-2 at 7-8.  She testified in her first deposition that she "took his feet because he was kicking a little bit." Id. at 19.  She denied having any idea "why this incident occurred[.]"  Id. at 23.

If these disturbing facts are true, a reasonable jury could conclude that Defendant Reeves did not act in good faith. Moreover, there is evidence that her actions may constitute a crime or willful misconduct.  See N.J.S.A. § 59:3-14 ("Nothing in this act shall exonerate a public employee from liability if it is established that [her] conduct was outside the scope of [her] employment or constituted a crime, actual fraud, actual

malice or willful misconduct."). Defendant Reeves is therefore not entitled to immunity under the NJTCA at this time.

E.    Substantive State Tort Claims

Defendant Reeves' final argument is that Plaintiff cannot meet his burden of proof on his state tort claims. Plaintiff concedes the intentional infliction of emotional distress claim must be dismissed. The Court denies summary judgment on the assault and battery claims.

"A person is subject to liability for the common law tort of assault if: '(a) [she] acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension.'" Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1117 (N.J. 2009) (quoting Wigginton v. Servidio, 734 A.2d 798, 806 (N.J. Super. Ct. App. Div. 1999)). Imminent apprehension is interpreted to mean that the person "must believe that the act may result in imminent contact unless prevented from so resulting by the other's self-defensive action or by his flight or by the intervention of some outside force." Restatement (Second) of Torts § 24. "The tort of battery rests upon a nonconsensual touching." Leang, 969 A.2d at 1117.

The Court denies summary judgment to Defendant Reeves on the assault claim because Plaintiff has presented evidence that

she put him in a state of imminent apprehension prior to the incident. Plaintiff testified at his deposition that he became afraid when he came down the stairs and saw the "lady guard" and "the guard with the red hair" standing there:

> It just, it just felt wrong. It felt like something was going to happen, just their body language, the way everything was set up. The way it felt when I came down, I knew something was going to happen. When I got to the bottom of the step, I knew something was going to happen, something bad was going to happen, I could tell.

ECF No. 147 117:25 to 118:6. There is evidence from which a reasonable jury could conclude Defendant Reeves intentionally put Plaintiff in imminent apprehension of contact.

Defendant Reeves argues Plaintiff cannot succeed on his battery claim because "corrections officers are privileged to commit a battery against a prisoner so long as the force used is reasonable and does not violate the Eighth Amendment." ECF No. 103-1 at 31. The Court has already identified a disputed issue of fact on Plaintiff's Eighth Amendment claim in the context of Defendant Reeves' qualified immunity argument. The Court denies summary judgment on the battery claim because a reasonable jury could conclude on the current record that Defendant Reeves used excessive force.

IV. CONCLUSION

For the reasons set forth above, Defendant Reeves is awarded summary judgment on the intentional infliction of

23

emotional distress claim.  The remainder of her motion is denied.

An appropriate Order follows.


Dated: March 9, 2020          s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.