UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                :
MARIANITO RUIZ,                 :
                                :
          Plaintiff,            :   Civ. No. 15-3304 (NLH) (JS)
                                :
     v.                         :   OPINION
                                :
                                :
NEW JERSEY DEPARTMENT           :
OF CORRECTIONS, et al.,         :
                                :
          Defendants.           :
                                :
_____:

APPEARANCES:

Gurbir S. Grewal, Attorney General of New Jersey
Michael R. Sarno, Deputy Attorney General
Office of the New Jersey Attorney General
R.J. Hughes Justice Complex
PO Box 116
Trenton, NJ 08625

     Counsel for Defendants Jerry Stretch, James McCabe, Kevin
Manning, Thomas Togno, Matthew Arrowood, Michael Ryan, Gerald
Gribble, Stephen Weldon, Brenda Hepner and Edward Soltys, i/p/a
Saltese


Nicholas Franchetti, Esq.
Archer & Greiner, P.C.
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033-0968

     Counsel for Defendant Lauren Reeves

Richard A. Stoloff, Esq.
Law Offices of Richard A. Stoloff
605 New Road
Linwood, NJ 08221

     Counsel for Plaintiff Marianito Ruiz

HILLMAN, District Judge

Plaintiff Marianito Ruiz, a former state prisoner, alleges Jerry Stretch, James McCabe, Kevin Manning, Thomas Togno, Matthew Arrowood, Michael Ryan, Gerald Gribble, Stephen Weldon, Brenda Hepner, Edward Soltys, and Lauren Reeves[1] conspired to inflict excessive force on Plaintiff and to cover-up that assault by claiming Plaintiff was the aggressor.  ECF No. 57. He raises federal claims of excessive force, conspiracy, failure to intervene, supervisory liability, and federal civil rights violations.  Id. at 9-16.  He also raises state tort claims of assault, battery, and intentional infliction of emotional distress.  Id. at 16-19.

The BSP Defendants and the Investigator Defendants now move for summary judgment.  ECF No. 131.  The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as it concerns a federal question, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).  For the reasons that follow, the Court will grant summary judgment to all moving defendants on the intentional infliction of emotional distress claim and to Defendant Gerard Gribble on all claims.

---

[1] For ease of reference, the Court will use "Defendants" when referring to all defendants and "BSP Defendants" when referring just to defendants Stretch, McCabe, Manning, Togno, Arrowood, Ryan, Gribble, and Weldon as Defendant Reeves is proceeding separately.  Defendants Hepner and Soltys are referred collectively to as the "Investigator Defendants."

Defendants Edward Soltys and Brenda Hepner are entitled to qualified immunity.  The Court denies summary judgment on the remainder of the claims.

The Court also considers the parties' motions to seal their exhibits filed in connection with the summary judgment motions and opposition papers.  ECF Nos. 152, 155, and 163.  The Court denies the motions to seal.  The Clerk will lift the seals currently on the docket, and the parties will directed to file any exhibits not currently on the public docket within 20 days of the issuance of this Opinion.

I.   BACKGROUND

On April 12, 2013, Plaintiff Marianito Ruiz was an inmate at Bayside State Prison's E-Unit.  ECF No. 139, Plaintiff's Statement of Facts ("PSOF") ¶ 1; ECF No. 131-2, BSP Defendants' Statement of Facts ("DSOF") ¶ 1.  Plaintiff became concerned for his physical safety after inmates belonging to the "blood street gang" began calling him "dog food", implying that he was a snitch.[2]  DSOF ¶¶ 2-3.  During dinnertime on April 12, 2013, Plaintiff approached Defendant Jerry Stretch and expressed his concerns.  Id. ¶ 4.  Defendant Stretch told Plaintiff to

---

[2] The BSP Defendants and Investigator Defendants recite Plaintiff's version of events but do not agree with it.  They did not respond to Plaintiff's supplemental statement of facts as required by Local Civil Rule 56.1(a).

retrieve his paperwork from his cell.  Id.  Plaintiff left his cell, located on the upper level, and saw Defendant Stretch standing at the bottom of the steps wearing blue latex gloves. Id. ¶ 6.  Plaintiff also observed a "lady guard" and an "officer with red hair" standing with Defendant Stretch.  Id. ¶ 7.

Plaintiff handed Defendant Stretch his paperwork, at which time Defendant Stretch punched Plaintiff.  Id. ¶ 8.  Plaintiff stated he "'purposefully' dropped to the ground and 'was on his face.'"  Id. ¶ 9.  Plaintiff did not recall if the "lady guard" or "officer with red hair" struck him.  Id. ¶ 10.  Plaintiff felt blows from different places and different parts of his body, but only saw Defendant Stretch strike him.  Id. ¶ 11. Plaintiff was lying face down on the ground and does not know how long the officers assaulted him.  Id. ¶¶ 12-13.

He was eventually handcuffed and pepper sprayed, and he states that he was hit again after the handcuffs were placed on him.  Id. ¶ 13.  Plaintiff testified that he was also slammed onto the ground several times.  Id. ¶ 14.  Plaintiff testified that he heard "the guards discussing that the situation was 'bad' and that 'somebody is going to take one in the face.'" Id.  ¶ 15.  He also testified that he heard some say "'the sarg is here, the sarg is here'" before he was taken to the infirmary.  Id. ¶ 16-17.

4

Plaintiff was charged with three disciplinary violations:
two counts of assault and one count of conduct that disrupts the
orderly running of the institution.  Id. ¶ 18.  Plaintiff
testified at his hearing that "he didn't touch anyone."  Id. ¶
19.  The disciplinary hearing officer ("DHO") relied on the
officers' reports and testimony to conclude that Plaintiff had
"initially refused a command and then suddenly 'charged at'
[Defendant Officer McCabe] and punched [Defendant McCabe] 'in
the left eye with a closed fist,' which started the
altercation."  Id. ¶ 20.  The DHO further concluded, based on
Defendant McCabe's written report, "that Officer Stretch arrived
and they 'attempted to restrain the inmate however he continued
punching [them].'"  Id. ¶ 21.  Someone called a Code 33, an
emergency signal, "and other officers 'assisted in taking the
inmate to the ground where he continued to fight by kicking [the
officers] with his legs and refusing all verbal commands to be
placed in hand restraints.'"  Id. (alteration in original).
Defendant McCabe wrote that OC spray[3] needed to be used "'to gain
control of [Plaintiff's] arms and place him in hand
restraints.'"  Id. ¶ 22.

Defendant Stretch's report largely mirrored Defendant
McCabe's, adding that he "delivered a closed-fist strike to

---

[3] The reference is to Oleoresin capsicum spray, colloquially
known as pepper spray.

5

Plaintiff's facial area 'to gain control and take him to the ground.'"  Id. ¶ 25.  Defendant Officers Togno, Weldon, Reeves, and Manning all submitted reports stating they observed Plaintiff fighting with Defendants McCabe and Stretch.  Id. ¶¶ 30-32, 34.  Defendant Manning "assisted in taking Ruiz to the ground" and stated he used the OC spray on Plaintiff's face because Plaintiff was not complying with orders to place his hands behind his back.  Id. ¶¶ 33-34.  Defendant Officer Arrowood reported he witnessed Plaintiff punch Defendant McCabe in the face and "assisted the officers in taking Plaintiff to the ground . . . ."  Id. ¶¶ 37-38.

Defendant Sergeant Ryan reported that "the incident caused a delay in 'mess' time, a cancellation of 'gym movement,' and disrupted the 'orderly operation of the institution,' particularly given that several officers had to be removed from their normal duties to perform additional tasks without a meal break."  Id. ¶ 29.  On April 15, 2013, the DHO concluded Plaintiff assaulted Defendants McCabe and Stretch and disrupted the orderly operation of the institution.  Id. ¶¶ 40-42.  The Administrator upheld the DHO decision and Plaintiff's appeal was dismissed by the New Jersey Superior Court, Appellate Division. Id. ¶¶ 43-44.

The Special Investigations Division ("SID") opened an internal investigation into Plaintiff's allegations that he was

assaulted without provocation.  Id. ¶ 45.  According to the
final report, Defendant Investigator Brenda Hepner served as the
lead investigator and Defendant Investigator Edward Soltys was
the principal investigator.  Id. ¶ 46.  Defendants Hepner and
Soltys reviewed the medical reports, interviewed Plaintiff and
the involved officers, interviewed other inmates, and reviewed
"other pertinent materials."  Id. ¶ 52.  Defendant Hepner
concluded that no other witnesses corroborated Plaintiff's
version of events.  Id. ¶ 53.  "[T]he SID investigation 'was
unable to find any evidence to substantiate inmate Ruiz's
allegations.'"  Id. ¶ 54.  The report also indicated that the
Cumberland County Prosecutor's Office concluded there was
insufficient evidence to establish criminal conduct.  Id. ¶ 55.

II.  STANDARD OF REVIEW

    Summary judgment should be granted when the pleadings,
depositions, answers to interrogatories, admissions on file, and
affidavits show that there is no genuine dispute as to any
material fact and that the moving party is entitled to a
judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A disputed
fact is material when it could affect the outcome of the suit
under the governing substantive law.  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the
evidence is such that a reasonable jury could return a verdict
for the non-moving party.  Id. at 250.  The Court should view

the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor.  Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a genuine issue concerning any material fact.  See Celotex Corp. v. Carrett, 477 U.S. 317, 323 (1986).  Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson, 477 U.S. at 257. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." Hugh, 418 F.3d at 267 (citing Anderson, 477 U.S. at 251).

If the court determines that "the record taken as a whole could not lead a rational trier or fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).  Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

8

III. <u>DISCUSSION</u>

The BSP and Investigator Defendants move for summary judgment on Plaintiff's amended complaint.  ECF No. 131. Plaintiff concedes the intentional infliction of emotional distress claim, the official capacity claims, and his claims against Gerald Gribble must be dismissed.  He opposes summary judgment on the remainder of the claims.  ECF No. 141.

The principal issues to be decided are (1) whether Defendants Soltys and Hepner are entitled to qualified immunity; (2) whether the Supreme Court's decisions in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994) and <u>Edwards v. Balisok</u>, 520 U.S. 641 (1997) bar Plaintiff's claims; (3) whether Plaintiff is precluded from arguing any facts that conflict with the facts found at the disciplinary hearing; (4) whether the BSP Defendants are entitled to judgment as a matter of law on Plaintiff's excessive force and failure to intervene claims; (5) whether the BSP Defendants are entitled to qualified immunity or immunity under the New Jersey Tort Claims Act; and (6) whether the BSP Defendants are entitled to judgment as a matter of law on the remainder of Plaintiff's claims.

A.   Investigator Defendants

Defendants Hepner and Soltys, the SID investigators charged with conducting the internal investigation of Plaintiff's

allegations, argue they are entitled to qualified immunity on
Plaintiff's conspiracy, supervisory liability, and federal civil
rights violation claims.[4]

"Qualified immunity shields government officials from civil
damages liability unless the official violated a statutory or
constitutional right that was clearly established at the time of
the challenged conduct." Taylor v. Barkes, 135 S. Ct. 2042,
2044 (2015) (internal citation and quotation marks omitted).
The first prong of the analysis "asks whether the facts, [t]aken
in the light most favorable to the party asserting the
injury,... show the officer's conduct violated a [federal]
right[.]" Tolan v. Cotton, 572 U.S. 650, 655-56 (2014) (per
curiam) (internal quotation marks and citations omitted)
(alterations and omissions in original).  "The second prong of
the qualified-immunity analysis asks whether the right in
question was 'clearly established' at the time of the
violation." Id. at 656 (internal citation and quotation marks
omitted).  "When properly applied, [qualified immunity] protects
all but the plainly incompetent or those who knowingly violate
the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011)
(internal quotation marks omitted).

---

[4] Plaintiff consented to dismissal of the intentional infliction
of emotional distress claim.

"[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'"  Tolan, 572 U.S. at 651 (second alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  "[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment."  Id. at 656; see also Bistrian v. Levi, 912 F.3d 79, 83 n.2 (3d Cir. 2018) ("In assessing an assertion of qualified immunity, we take the facts in the light most favorable to 'the party asserting the injury'...." (quoting Scott v. Harris, 550 U.S. 372 (2007))).

The Court concludes Defendants Hepner and Soltys are entitled to qualified immunity.  Plaintiff argues that Defendants Hepner and Soltys "depriv[ed] the plaintiff of his 8th Amendment and 14th Amendment rights resulting in the use of unlawful excessive force against the plaintiff through their participation in a conspiracy to conceal the unlawful acts of the corrections officers, implicitly and expressly condoning and accepting the violent and illegal acts of all defendants."  ECF No. 141 at 11-12.  Essentially, Plaintiff argues that the investigators were part of an after-the-fact conspiracy denying him a full and fair investigation by internal prison authorities.

Plaintiff has not shown sufficient facts from which a
reasonable jury could find, under existing law, a violation of a
constitutional right by Defendants Hepner and Soltys.
Plaintiff's argument fails to the extent it is couched as a
denial of access to the courts claim.  The injury stemming from
an after-the-fact conspiracy is not the instigating incident,
such as excessive force, but a denial of access to the courts
because the injured party cannot proceed with their claims
against the actual aggressors due to the agreement to cover up
the incident.  See, e.g., Jutrowski v. Twp. of Riverdale, 904
F.3d 280 (3d Cir. 2018); Estate of Smith v. Marasco, 318 F.3d
497, 511-12 (3d Cir. 2003).

Here, there is no indication that Plaintiff has been denied
access to the Court as Plaintiff has brought his civil claim
against the relevant parties, and he does not suggest in his
opposition that there are parties whose identities are unknown
because of Defendants Hepner and Soltys.  Moreover, as set forth
infra, the Court will not apply the bar of Heck v. Humphrey, 512
U.S. 477 (1994) at this time.  "[E]ven assuming that [Plaintiff
has] proffered sufficient evidence for a jury to conclude that
there was a cover-up, the alleged conduct did not prevent [him]
from filing suit or render [his] access to the courts
ineffective or meaningless."  Estate of Smith, 318 F.3d at 512.

12

Plaintiff cannot state a conspiracy claim against the Investigators by alleging that Defendants Hepner and Soltys interfered with the internal investigation by improperly bolstering the credibility of the DHO's finding of guilt.  "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." Jutrowski, 904 F.3d at 293-94 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 150-52 (1970)).  Here other than conclusory assertions and rank suspicion, Plaintiff offers no admissible evidence that Hepner and Soltys agreed to falsify the results of the investigation.  That they reached a conclusion different from the version of the underlying event proffered by Plaintiff does not, standing alone, make them co-conspirators to deny Plaintiff his due process rights.[5]

This claim also fails to the extent the Hepner and Soltys investigation could be said to assess the conduct of the officers in the underlying altercation.  The Supreme Court has never held that prisoners have due process rights during

---

[5] It is well established that prisoners have due process rights during prison disciplinary proceedings. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974)(holding).  However, Plaintiff's claims against Hepner and Soltys do not arise from Plaintiff's disciplinary proceeding but rather from a separate internal investigation of the conduct of the officers instigated by Plaintiff's allegations that he had been set up for an assault.

internal prison investigations into staff conduct.  Plaintiff
cannot prove a § 1983 conspiracy claim where the object of the
conspiracy is interference with an internal prison investigation
because Plaintiff did not have a federal due process right
arising from such an investigation.  In other words, Defendants
Hepner and Soltys cannot have conspired to violate Plaintiff's
due process rights where none existed.  Since there is no
underling constitutional violation, Plaintiff's supervisory
liability claim also fails under the first prong of the
qualified immunity analysis.

In the absence of a violation of a clearly established
constitutional right, this Court is required to grant qualified
immunity to Defendants Hepner and Soltys on Plaintiff's
conspiracy, supervisory liability, and federal civil rights
violation claims.

B.   Heck v. Humphrey

The BSP Defendants next argue that Plaintiff's claims are
barred by the Supreme Court's decisions in Heck v. Humphrey, 512
U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997).
ECF No. 131-1 at 35.  In Heck, the Supreme Court held that
before a § 1983 plaintiff may "recover damages for allegedly
unconstitutional conviction or imprisonment, or for other harm
caused by actions whose unlawfulness would render a conviction
or sentence invalid," he must first "prove that the conviction

or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]"  512 U.S. at 486-87.  The Court extended Heck's "favorable termination" rule to prison disciplinary sanctions which alter the duration of a prisoner's term of incarceration, including the loss of good time credits.  Edwards, 520 U.S. 641.

It is uncontested that the DHO found Plaintiff committed the infractions of assault, N.J.A.C. § 10A:4-4.1(a)(1)(ii); and conduct that disrupts the orderly running of the institution, N.J.A.C. § 10A:4-4.1(a)(2)(xxix).  It is also uncontested that the infractions have not been expunged or otherwise reversed by the Department of Corrections or by any court.

Plaintiff argues Heck and Edwards should not apply to him at all because he is no longer in state custody and the habeas remedy is no longer available to him.  This position has been rejected by the Third Circuit.  See Williams v. Consovoy, 453 F.3d 173, 177 (3d Cir. 2006) ("[A] § 1983 remedy is not available to a litigant to whom habeas relief is no longer available."); Gilles v. Davis, 427 F.3d 197, 209-10 (3d Cir. 2005) ("Heck's favorable termination rule applies to all § 1983 plaintiffs, not just those in state custody.").  Therefore, Plaintiff's claims are barred if his success "would necessarily

15

demonstrate the invalidity of [his] confinement or its
duration." Wilkinson v. Dotson, 544 U.S. 74, 82 (2005).

The Court finds that Plaintiff's claims do not necessarily
demonstrate the invalidity of Plaintiff's confinement or
duration of his sentence.  Unlike federal good time credits, New
Jersey "good time" does not "necessarily" mean an earlier
release date as the credits are used to compute the prisoner's
parole eligibility date.  N.J.S.A. § 30:4-140.  "Parole
eligibility is different from parole suitability.  The fact that
a prisoner is eligible for parole means only that the paroling
authority must consider his application for parole under the
relevant parole guidelines." Thomas v. Brennan, 961 F.2d 612,
614 n.3 (7th Cir. 1992).

Therefore, "restoration of [Plaintiff's] good-time credits
would afford him only speedier consideration for discretionary
parole, rather than ensure speedier release." Marshall v.
Milyard, 415 F. App'x 850, 855 (10th Cir. 2011) (finding
retaliation claim was not Heck barred).  See also Wilkinson 544
U.S. at 82 (finding suit challenging state procedures used to
deny parole eligibility was not Heck barred because "it means at
most new eligibility review, which at most will speed
consideration of a new parole application." (emphasis in
original)).  Because restoration of Plaintiff's good time
credits would have only presented the possibility of earlier

16

release as opposed to the surety, Heck does not necessarily bar
his claims. See also Nelson v. Campbell, 541 U.S. 637, 647
(2004) ("[W]e were careful in Heck to stress the importance of
the term 'necessarily.'").

The BSP Defendants also argue that Plaintiff cannot offer
any evidence that contradicts the findings of the disciplinary
hearing officer.  They assert the Court must find that Plaintiff
struck Officer McCabe first and resisted officers' efforts to
subdue him.  They rely on Concepcion v. Morton, which stated
that "the Court may not consider evidence that implies that the
disciplinary punishments imposed against the plaintiffs are
invalid."  125 F. Supp. 2d 111, 123 (D.N.J. 2000), overruled on
other grounds, 306 F.3d 1347 (3d Cir. 2002).  See ECF No. 131-1
at 36-37.

First, the Supreme Court has never held that parties are
collaterally estopped from contesting facts from prison
disciplinary findings.  See Simpson v. Thomas, 528 F.3d 685, 694
(9th Cir. 2008) ("Since the inception of the rule in Heck, the
Court has only addressed this issue a few times, and in none of
those cases did the Court address the use of Heck to bar
evidence.").  Second, the principles of collateral estoppel do
not warrant application in this case.  The BSP Defendants cite
the Third Circuit's statement in Roth v. Koppers Industries,
Inc., that "[w]ith respect to section 1983, the [Supreme] Court

examined congressional intent and the policies underlying common law rules of preclusion, and concluded that unreviewed administrative factfindings should be given preclusive effect in subsequent section 1983 actions." 993 F.2d 1058, 1061 (3d Cir. 1993).  However, the Court of Appeals clarified in a footnote that this preclusive effect is limited to  "'when a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate . . . .'"  Id. at 1061 n.3 (quoting Univ. of Tennessee v. Elliott, 478 U.S. 788, 798 (1986)) (first omission in original).

The late Judge Dickinson R. Debevoise of this District noted in a case like this one that Concepcion "conditions the preclusive effect of a disciplinary hearing's findings on the validity of that process." Kounelis v. Sherrer, 529 F. Supp. 2d 503, 529 (D.N.J. 2008).  In Kounelis, defendants argued that plaintiff could not proceed with his excessive force claim because he had been found guilty of unauthorized touching at a disciplinary proceeding.  Id. at 528-29.  Plaintiff submitted evidence that defendants failed to preserve the surveillance video, and Judge Debevoise concluded spoliation sanctions were warranted.  Id. at 520.  "Although Defendants accurately observe that the disciplinary hearing officer's finding of guilt has not been reversed, Defendants' argument ignores the fact that the

disciplinary hearing itself is subject to attack and was impaired by the spoliation of evidence—evidence that may have supported Kounelis's version of events and resulted in a finding of not guilty." Id. at 529. "Thus, there is sufficient evidence that Kounelis's disciplinary hearing was impaired and, if so, Kounelis is not precluded from presenting evidence in support of his § 1983 claim for violation of his Eighth Amendment rights." Id.

As set forth in more detail below, Plaintiff has presented the Court with enough evidence of a conspiracy by Defendants – evidence coming from one of the Defendants herself - to suggest that Plaintiff's disciplinary proceeding was not an "adequate opportunity to litigate" the issues. It would be a perverse injustice to rely on a corrupted disciplinary process and a result procured by perjury to shield a defendant from the consequences of an intentional attack on an inmate by prison guards. Heck and Edwards must be read in light of the constitutional protections afforded the incarcerated which would include a disciplinary process free of perjury and deceit. In the unique circumstances of this case, the Court will not preclude Plaintiff from arguing his version of events to a jury.[6]

---

[6] It appears quite clear to this Court that one of more of the Defendants have not been truthful at all times about the underlying altercation. Officer Reeves was present for the

C.   Federal Claims

Beginning with the premise that the Court must apply the

Heck bar, the BSP Defendants next argue that they are entitled

to judgment as a matter of law on Plaintiff's federal claims of

excessive force, failure to intervene, supervisory liability,

and federal civil rights violation claims.  Having concluded

that Heck does not bar the claims entirely or estop Plaintiff

from arguing his version of events, the Court finds that the BSP

Defendants are not entitled to judgment as a matter of law.

"The test for whether a claim of excessive force is

constitutionally actionable is 'whether force was applied in a

good faith effort to maintain or restore discipline or

maliciously and sadistically for the very purpose of causing

harm.'"  Giles v. Kearney, 571 F.3d 318, 328 (3d Cir. 2009)

(quoting Whitley v. Alber, 475 U.S. 312, 319 (1986)).  The

relevant factors for consideration are:

> (1) the need for the application of force; (2) the
> relationship between the need and the amount of force
> that was used; (3) the extent of injury inflicted; (4)
> the extent of the threat to the safety of staff and
> inmates, as reasonably perceived by the responsible

---

altercation, participated in the internal investigation which
cleared the other Officers and has now apparently approached
Plaintiff's counsel with a very different version of events.
Importantly, her newer statement if true directly corroborates
Plaintiff's assertion that he was not the instigator.  It
remains to be seen which version of the altercation is true, but
this Court will not rely on an investigative and adjudicative
process that will prove to be so plainly corrupted if Reeves'
latest version is turns out to be true.

officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Id.; see also Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000).

If the Court accepts Plaintiff's version of events for summary judgment purposes, he has easily stated an excessive force claim.  There was no need for the application of force because Plaintiff had not done anything to warrant force being used against him, nor was there any safety risk to the staff. Plaintiff was struck in the head, face, and ears and was held in a choke hold.  ECF No. 146-25 at 4.  He was pepper sprayed.  Id. If there was an attempt to temper the use of force it is well hidden from the Court.

 Among other injuries, Plaintiff sustained a "comminuted right orbital floor fracture into the zygomatic bone, comminuted right maxillary sinus fracture and zygomatic arch fracture." Id.  Cooper Hospital confirmed multiple facial fractures, and CT scans showed "extensive swelling and bruises to the front, sides and back of the head."  Id.; see also ECF No. 146-27.  He underwent surgery to implant metal plates and screws.  ECF No. 146-27 at 3.  Using these facts, a reasonable jury could conclude that the force was not inflicted as part of a "good faith effort to maintain or restore discipline" because Plaintiff testified he had done nothing to provoke the assault.

21

Plaintiff has submitted evidence that the BSP Defendants conspired to assault Plaintiff.  See generally ECF No. 146-7 (deposition of Richard A. Stoloff).  Defendant Reeves invoked her Fifth Amendment right against self-incrimination during her second deposition, including to the question "Was Mr. Ruiz's incident falsely called a Code 33 to give an excuse for an assault on him by correction officers?"  ECF No. 146-3 8:18-20.  "Unlike the rule in criminal cases . . . reliance on the Fifth Amendment in civil cases may give rise to an adverse inference against the party claiming its benefits."  S.E.C. v. Graystone Nash, Inc., 25 F.3d 187, 190 (3d Cir. 1994).  A reasonable factfinder combining Plaintiff's testimony, Mr. Stoloff's testimony, and Defendant Reeves' invocation of the Fifth Amendment could infer that there was a pre-planned attack on Plaintiff.[7]  Graystone Nash, Inc., 25 F.3d at 191.  With an adverse inference against an alleged co-conspirator, a reasonable jury could find the BSP Defendants used excessive force from the record before the Court.[8]

---

[7] Assuming the availability of a competent witness to testify to it, Defendant Reeves' out of court statement may also be admissible at trial under a hearsay exception.  Fed. R. Evid. 804(b)(3)(statement against interest, declarant unavailable because of privilege or refusal to testify).

[8] Defendants rely on the Heck bar to conclude Plaintiff cannot state an excessive force claim and conclude from there that he cannot make any "derivative" claims.  ECF No. 131-1 at 40.

D.   Qualified Immunity

The BSP Defendants also argue they are entitled to qualified immunity on Plaintiff's excessive force claim because the evidence shows "a good faith effort to maintain and restore discipline after Plaintiff initiated an altercation and then was noncompliant and resisted restraints."  ECF No. 131-1 at 47.

The Court denies qualified immunity to the BSP Defendants at this time because there are disputed issues of fact on Plaintiff's claims.  In order to grant qualified immunity to the BSP Defendants, the Court must accept their version of events. The Court has declined to estop Plaintiff from arguing his version of events and cannot resolve factual disputes in the BSP Defendants' favor on summary judgment.  Tolan v. Cotton, 572 U.S. 650, 656 (2014) (per curiam); see also Giles v. Kearney, 571 F.3d 318, 327 (3d Cir. 2009) (reversing district court for finding qualified immunity in excessive force case where "such a legal conclusion ... rests on a factual presumption that is inappropriate on summary judgment").  A reasonable jury could conclude that the BSP Defendants violated Plaintiff's clearly established right to be free from an unprovoked beating.  See Hill v. Algore, 85 F. Supp. 2d 391, 409 (D.N.J. 2000) ("The

---

Because the Court concludes Plaintiff can state an excessive force claim and Defendants do not brief the other claims in any substance, the Court will not address them further.

right to be free from an unprovoked beating is clearly
established."); see also Thompson v. Montemuro, 383 F. Supp.
1200, 1203 (E.D. Pa. 1974).  Under the version of events most
favorable to Plaintiff, Defendants purposefully inflicted severe
pain on Plaintiff for no reason.  A reasonable officer would
have known that this behavior was not lawful.

A reasonable factfinder could also determine that the BSP
Defendants violated Plaintiff's clearly established right to
have officers intervene to prevent an unprovoked beating.  "[I]t
would be clear to a reasonable officer that failing to intervene
when a fellow officer employs excessive force" against an inmate
who was not resisting and had not provoked the use of force
against him was unlawful.  Abrahante v. Johnson, No. 07-5701,
2009 WL 2152249, at *12 (D.N.J. July 14, 2009) (collecting cases
that recognize an officer's duty to intervene when a fellow
officer employs excessive force).[9]

The BSP Defendants also assert they are immune from suit
under the New Jersey Tort Claims Act ("NJTCA").  The NJTCA
states in relevant part that "[a] public employee is not liable

---

[9] Again, Defendants do not substantively address the other
claims.  "The burden of establishing the affirmative defense of
qualified immunity lies with the party seeking to invoke it."
Murphy v. Middlesex Cty., 361 F. Supp. 3d 376, 390-91 (D.N.J.
2019) (citing Thomas v. Indep. Twp., 463 F.3d 285, 292 (3d Cir.
2006)).

if he acts in good faith in the execution or enforcement of any law." N.J.S.A. § 59:3-3. "In order to meet the good faith standard, [a] public employee either must demonstrate objective reasonableness or that he behaved with subjective good faith. The burden of proof is upon the employee, who must prove either of those components in order for the good faith immunity to attach." Toto v. Ensuar, 952 A.2d 463, 470 (N.J. 2008) (first alteration in original) (internal quotation marks and citation omitted).

Accepting Plaintiff's version of events for summary judgment purposes, Defendant Stretch struck Defendant McCabe in the face and then called a Code 33 based on the false premise that Plaintiff was the one to strike Defendant McCabe. Other officers responded to the Code 33 and then participated in the assault or failed to prevent other officers from assaulting Plaintiff even though he was not resisting or being combative in any way. Finally, "[a]ll the COs" knew that Defendant Stretch had really been the one to strike Defendant McCabe but formed a "blue wall of silence" and told the Investigators and DHO that Plaintiff had been the aggressor. This false story was repeated in official reports, interviews, and Plaintiff's disciplinary proceedings. It was only after Defendant Reeves' first deposition that the truth of the matter was revealed.

25

If these disturbing facts are true, a reasonable jury could conclude that the BSP Defendants did not act in good faith, objectively or subjectively.  Moreover, there is evidence that their actions may constitute a crime or willful misconduct.  See N.J.S.A. § 59:3-14 ("Nothing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct.").  Therefore, the BSP Defendants are not entitled to immunity under the NJTCA at this time.

E.    "Related and Derivative" Claims

The BSP Defendants argue that Plaintiff cannot meet his burden of proof on the rest of his claims.  Plaintiff concedes the intentional infliction of emotional distress claim must be dismissed.  The Court will otherwise deny summary judgment.

The BSP Defendants argue the remaining "related and derivative causes of action" must be dismissed because Plaintiff is precluded by Heck from arguing any facts other than those found by the DHO.  ECF No. 131-1 at 39.  "In other words, given that the officers did not employ excessive force in the underlying incident the [BSP] Defendants, consequently, could not have committed any related wrongdoing arising from their supposed use of unlawful force."  Id. at 40.  The Court has already decided that Heck does not so preclude Plaintiff and has

26

already identified disputed issues of fact on Plaintiff's Eighth Amendment claim in the context of the BSP Defendants' qualified immunity argument.   Although corrections officers are permitted to use reasonable force to bring a prisoner into compliance, they are not permitted to use excessive force in any circumstances.   The Court denies summary judgment on the "related and derivative causes of action" because of the genuine issues of material fact concerning the use of force against Plaintiff.

   F.   Motions to Seal

   The final issue the Court must resolve are the parties' motions to seal their exhibits filed in connection with the summary judgment motion and opposition briefs.   ECF Nos. 152, 155, and 163.   The Court will deny the motions.

   "It is well-settled that there exists, in both criminal and civil cases, a common law public right of access to judicial proceedings and records.   The public's right of access extends beyond simply the ability to attend open court proceedings. Rather, it envisions a pervasive common law right to inspect and copy public records and documents, including judicial records and documents."   In re Cendant Corp., 260 F.3d 183, 192 (3d Cir. 2001) (internal citations and quotation marks omitted).   A party seeking to seal portions of the judicial record from public view "bears the heavy burden of showing that the material is the kind

27

of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." Millhouse v. Ebbert, 674 F. App'x 127, 128 (3d Cir. 2017) (per curiam) (internal quotation marks and citations omitted).

Despite being given another opportunity after their first motions did not comply with the local rules, the parties have still failed to comply with Local Rule 5.3 and this Court's Order. See ECF No. 160. Defendants have not filed their unredacted materials on the docket under temporary seal; several exhibits on the docket are single pages marked "Pursuant to the DCO only hard copies will be provided." See, e.g., 131-4 at 4.

The Court finds that the documents the parties seek to seal do not meet the high standard to be kept from public disclosure. The fact that a document is subject to a discovery confidentiality order does not necessarily mean that it meets the standard to be sealed on the public docket. The parties have not satisfactorily explained why the Amended Complaint and Defendant Reeves' answer, which are public pleadings filed elsewhere on the public docket, need to be sealed as Plaintiff's Exhibits D & E. Nor does the Court find persuasive the expressed reasons for sealing Plaintiff's Exhibit C, Defendant Reeves' Second Deposition; Plaintiff's Exhibit F, Plaintiff's counsel's certification which was previously publicly docketed

at ECF No. 44-9; Plaintiff's Exhibit G, the deposition of Plaintiff's counsel; or Plaintiff's Exhibit U, the photographs of Plaintiff's injuries.  These documents do not contain the kind of information that should not be disclosed to the public. In fact, the conflicting stories are the best proof they represent the kind of information the public should be made aware of as whether jails are, or are not, run in a manner consistent with the Constitution should be a matter of public interest and concern to all citizens and the fourth estate. Likewise, the BSP Defendants' exhibits contains information that would be disclosed at trial; therefore, the Court sees no reason to seal them on the docket.

The motions to seal will be denied.  To the extent any exhibits are not filed on the public docket, the parties will file them within 20 days of this Opinion and Order.

IV.  <u>CONCLUSION</u>

For the reasons set forth above, the Court will grant summary judgment to all BSP Defendants on the intentional infliction of emotional distress claim and to Defendant Gerard Gribble on all claims.  Defendants Edward Soltys and Brenda Hepner are entitled to qualified immunity.  The Court denies summary judgment on the remainder of the claims.

The motions to seal are denied.  The Clerk will lift the seals currently on the docket, and the parties are directed to

file any exhibits not currently on the public docket within 20

days.

An appropriate Order follows.


Dated: __May 1, 2020____          ____s/ Noel L. Hillman_____
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.